Donald Ray LEAVINGS, Appellant,

v.

Jim MILLS, Individually and d/b/a Multimortgage Bancorp., Appellees.

No. 01–03–00047–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 26, 2004.

J.W. Beverly, Houston, TX, for Appellant.

Lester R. Buzbee III, Humble, TX, for Appellees.

Panel consists of Justices TAFT, KEYES, and BLAND.

## OPINION ON MOTION FOR REHEARING

EVELYN V. KEYES, Justice.

The court has considered appellees' motion for rehearing in this case and is of the opinion that the motion should be denied. However, we withdraw our opinion and judgment dated April 29, 2004 and substitute those issued today.

Appellant, Donald Ray Leavings (Leavings), challenges the trial court's rendition of summary judgment in favor of appellees, Jim Mills, individually and d/b/a Multimortgage Bancorp. (collectively Mills), in a suit for (1) removal of an encumbrance on property owned by Leavings resulting from Mills' enforcement of a trust deed pursuant to a note granting a security interest in the property; (2) declaratory judgment; (3) deceptive trade practices violations; and (4) usury. In three issues, appellant contends the trial court erred in rendering summary judgment and awarding Mills the right to foreclose on Leavings' property because Mills failed to establish as a matter of law that he was the owner or holder of the note and entitled to recover the amount due on the note. We reverse and remand.

## Background

In November 1984, John E. Leavings and his wife Evelyn Fay Leavings, both elderly and now deceased, entered into a home improvement contract with Solar Marketing Corporation. The contract called for the installation of a home improvement solar heating system. On November 15, 1984, the Leavings executed a retail installment contract in which they agreed to pay Solar Marketing $8,495 for the heating system at 16.5% interest per annum, payable in 120 installments of $146.82 each beginning 60 days from the date the Completion Certificate was signed, which was estimated to be December 15, 1984. The record also includes a "Completion Certificate for Property Im-

provement Loan Work Done or Materials Delivered," dated December 10, 1984, and signed by the Leavings and Solar Marketing, confirming completion of the work.[1]

The retail installment contract stated that Solar Marketing would retain a security interest in the tank, pipes, and valves of the solar water heating system and that a mechanic's and materialman's lien would be placed on the Leavings' residence. It also specifically stated, "Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof." The reverse side of the retail installment contract contains additional terms and conditions. To secure payment of the retail installment contract, the Leavings also executed a "Contract for Labor and Materials and Trust Deed" (the trust deed) on November 15, 1984.

On November 21, 1984, Solar Marketing executed an assignment of the note described in the retail installment contract, "together with all liens existing to secure its payment," to Briercroft Service Corporation.[2] On December 11, 1984, the day after the Leavings and Solar Marketing executed the completion certificate, Briercroft Service Corporation assigned the note, "together with all liens existing to secure its payment," to Briercroft Savings Association. On December 18, Briercroft Savings Association filed the trust deed and a document reflecting the transfers of the note and the trust deed from Solar Marketing to Briercroft Service Corporation and from Briercroft Service Corpora-

---

1. Since the Leavings' payments were to be made in 120 monthly installments beginning 60 days after the date of execution of the Completion Certificate, the final payment was due February 8, 1995.

2. The reverse side of the retail installment contract memorializes the assignment from

Solar Marketing Corporation to Briercroft Service Corporation of the "Retail Installment Contract, and the Note and security documents, together with all of Seller's right, title, and interest and to the consumer goods and other property therein described."

tion to Briercroft Savings Association in the Official Records of Fort Bend County at volume 1577, pages 372 and 373.

In 1987, after repeated problems with the heating system, the Leavings ceased making payments on their note. In October 1987, they received a letter from a law firm representing Briercroft Service Corporation, which noted that Briercroft had entered into a settlement agreement with the Texas Attorney General regarding Briercroft's alleged derivative liability resulting from its loan customers' transactions with Solar Marketing Corporation. Briercroft extended the terms of the settlement agreement to the Leavings, but they refused the offer and sent a counteroffer to Briercroft. Briercroft ignored the counteroffer, and the Leavings did not further pursue it.

In March 1989, the Leavings received a letter from Briercroft Service Corporation advising them that their note was in default, demanding past due payments and interest, and threatening to foreclose on their home. The Leavings' attorney responded, and Briercroft did not further pursue its demand at that time.

In May 1997 (after Mr. Leavings' death), Evelyn Fay Leavings received a letter from "Trustees of Texas," signed by James C. Mills as "substitute trustee," claiming that the Leavings' note had fully matured, demanding payment in the amount of $21,196, and threatening to foreclose on their home. After receiving the letter, Evelyn Fay Leavings filed suit against Mills as substitute trustee and other substitute trustees to enjoin the threatened foreclosure.[3] The trial court granted the temporary injunction on June 6, 1997. In February 1998, Mills filed a counterclaim, seeking an order of possession and foreclosure, and claiming that he was the owner

and holder of the note executed by the Leavings, which he had purchased from the receiver of Briercroft Savings Association.

On June 26, 2002, Mills filed a motion for summary judgment that forms the basis of this appeal. In the motion, Mills stated that he was the owner and holder of the Leavings' note, dated November 15, 1984, which was secured by a lien on the Leavings' real property. Mills stated, "The Leavings' obligation was held by the Briercroft Saving and Loan Association [sic] which was eventually taken over by the FSLIC and OTS, who sold the note through the RTC." Mills claimed the note was due in full on February 10, 1995, and the amount due on the note as of June 21, 2002 was $73,572.63.

In support of his motion, Mills attached, as Exhibit 1, his affidavit attesting that the facts stated in his motion for summary judgment were true and correct and attesting that his affidavit exhibits A–F were "true and correct copies of the Retail Installment 'Contract'; Contract for Labor and Material and Trust Deed; 'Completion Certificate'; and assignments thereof." In his motion, Mills stated that these documents constitute "all signed documents from (builder) [sic] to final owner, JAMES C. MILLS." Mills further attested in his affidavit that the original of each of these documents had been filed with the trial court.

Exhibits A through D to the Mills affidavit include (A) the Leavings' retail installment contract; (B) the trust deed and the 1984 assignments of the Leavings' note and trust deed from Solar Marketing to Briercroft Service Corporation and from Briercroft Service Corporation to Briercroft Savings Association, as filed at vol-

**3.** Mrs. Leavings subsequently died and her son, Donald Ray Leavings, appeared in the trial court as Independent Executor of the Estate of Evelyn Leavings.

ume 1577, pages 372 and 373 of the Official Records of Fort Bend County; (C) the completion certificate; and (D) a "Notice of Right to Cancel the Retail Installment Contract," executed on November 15, 1984.

Exhibit E to Mills' affidavit is a "Transfer and Assignment Agreement" dated October 23, 1995, between Briercroft Service Corporation, as "owner and holder of that certain Loan and the Liens securing the same," and Old Republic Insured Financial Acceptance Corporation. The agreement assigns to Old Republic all of Briercroft Service Corporation's "right, title and interest" in the loan and liens described in an attached exhibit as the Leavings' "National Housing Act Loan Under Title I" and the trust deed recorded at volume 1577, page 372 of the Official Records of Fort Bend County. The transfer and assignment agreement is signed by Jon G. Moyer for Briercroft Service Corporation and states that the assignment is made pursuant to "that certain Loan Sale Agreement dated October 23, 1995," and "pursuant to the terms and conditions of said Loan Sale Agreement." The assignment is marked as filed and recorded in the official records of Fort Bend County on December 14, 1995.

■ Exhibit 3 to the motion for summary judgment supports Exhibit E to Mills' affidavit. Exhibit 3 is the affidavit of Daniel Bell, Resolution Specialist for the Federal Deposit Insurance Corporation (FDIC) as successor to the Resolution Trust Corporation (RTC). It attests that Jon G. Moyer had full authority to execute "the attached copy of the Transfer and Assignment Agreement recorded in the public real estate records of Fort Bend County, Texas." The Bell affidavit then identifies the October 23, 1995 Loan Sale Agreement as an agreement between Briercroft Service Corporation and the RTC as Receiver for Beacon Federal Savings Association, as sellers, and Old Republic, as purchaser, and states that the Loan Sale Agreement is "permanently recorded with the Resolution Trust Corporation as RTC Master Contract Nos. 37624 (Beacon) & 37625 (Briercroft) and stored as Case # DOSSWF–SA–5615." However, the Loan Sale Agreement is not attached either to Exhibit "E" to Mills' affidavit or to Bell's affidavit.[4]

Exhibit "F" to Mills' summary judgment affidavit is an assignment of the trust deed from Old Republic to Multimortgage Bancorp. dated December 6, 1996. There is no assignment from Multimortgage Ban-

4. Mills attached to his Motion for Rehearing on appeal an unsworn copy of a purported "Loan Sale Agreement Between Briercroft Service Corporation and Resolution Trust Corporation, solely in its capacity as Receiver for Beacon Federal Savings Association ("Sellers") and Old Republic Insured Financial Corporation ("Purchaser")" executed by Briercroft's president on October 18, 1995 and by the RTC for Old Beacon on October 20, 1995. This document contains no exhibits or attachments and makes no mention of the Leavings' note or trust deed. In addition, Mills attached an orphan spreadsheet titled "Title I Charge–Off Total Balance," which references, *inter alia,* a loan in the name of John Leavings.

Texas' summary judgment rule requires that "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." TEX.R. CIV. P. 166a(f) (Vernon 2004). Materials offered as summary judgment evidence for the first time on appeal may not be considered as summary judgment evidence. *See id.; Priesmeyer v. Pac. Southwest Bank,* 917 S.W.2d 937, 939 (Tex.App.-Austin 1996, no writ) (spreadsheet submitted by financial institution that acquired assets of failed bank was not proper summary judgment proof where spreadsheet was not submitted with institute's motion for summary judgment). Thus, we do not consider the unsworn documents submitted by Mills for the first time on appeal.

corp. to Mills; but Mills testifies in his affidavit, "I am the owner of Multimortgage Bancorp."; he avers in his motion for summary judgment that Exhibit 2 to his motion, the affidavit of JoAllyn Comstock, the records keeper of Old Republic, "attest[s] to sale and assignment" of the Leavings' note to him. However, no transfer of the note to Mills or to Multimortgage Bancorp. is referenced in the Comstock affidavit. That affidavit, dated January 24, 2002, merely states, "The document attached to this affidavit is a true and correct copy of the Loan Sale Agreement of October 23, 1995 between Briercroft Service Corporation and the Resolution Trust Corporation as Receiver for Beacon Federal Savings Association as sellers and Old Republic Insured Financial Acceptance Corporation as purchaser, that is a permanent part of the files and records of Old Republic Insured Financial Acceptance Corporation." Again, no copy of the Loan Sale Agreement is attached to the Comstock affidavit. The only reference to Mills or Multimortage Bancorp. in the Comstock Affidavit is the statement, "I am fully aware that this affidavit will become a permanent part of the records of James C. Mills and MultiMortgage BanCorp [*sic*] and as such will be used as an exhibit in a Court of Law."

The summary judgment evidence concludes with Exhibit 4 to the motion for summary judgment, the fee affidavit of Mills' attorney, Lester R. Buzbee, III.[5]

On August 5, 2002, the trial court heard and granted Mills' motion for summary judgment. On October 1, 2002, the trial court signed the final summary judgment. The judgment ordered that Mills was entitled to foreclose his lien on the Leavings'

property "as owner and holder of the Contract and Deed of Trust" executed by the Leavings; it awarded Mills a judgment against the Estate of Evelyn Fay Leavings in the amount of $73,572.63 with a per diem rate of $33.25 until paid; and it awarded Mills $25,000 in attorney's fees. This appeal followed.

### Discussion

*Standard of Review*

■■■ A party moving for summary judgment has the burden of proving that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). To be entitled to summary judgment as a plaintiff, a movant must prove each element of its claim as a matter of law. *See Nixon*, 690 S.W.2d at 548; *Geiselman v. Cramer Fin. Group, Inc.*, 965 S.W.2d 532, 535 (Tex.App.-Houston [14th Dist.] 1997, no writ); *Al's Formal Wear of Houston, Inc. v. Sun*, 869 S.W.2d 442, 444 (Tex.App.-Houston [1st Dist.] 1993, writ denied). In deciding whether a disputed material fact issue exists, we accept as true evidence favorable to the non-movant and indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Id.* at 548–49. In its order granting summary judgment for Mills, the trial court did not state the specific grounds for its ruling. Therefore, we will affirm if any of the theories advanced in Mills' summary judgment motion is meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989).

*Owner or Holder of Note*

In his first issue presented, appellant argues that the summary judgment proof

---

5. An additional affidavit of Buzbee, filed on the date of the summary judgment hearing to supplement Mills' summary judgment proofs of ownership of the note, was struck in response to appellant's objections, and appellant's motion to file a supplemental response to Mills' motion for summary judgment was denied.

fails to establish that Mills is the owner or holder of the Leavings' note.

■ To prevail on a summary judgment motion, a party seeking to enforce a note must prove (1) that a certain note is in question, (2) that the party sued signed the note, (3) that the plaintiff is the owner or holder of the note, and (4) that a certain balance is due and owing on the note. *SMS Fin., LLC v. ABCO Homes, Inc.*, 167 F.3d 235, 238 (5th Cir.1999); *Bean v. Bluebonnet Sav. Bank FSB*, 884 S.W.2d 520, 522 (Tex.App.-Dallas 1994, no writ); *Clark v. Dedina*, 658 S.W.2d 293, 295 (Tex.App.-Houston [1st Dist.] 1983, writ dism'd).

Appellant contends that Mills failed to prove that he was the owner or holder of the note, a prerequisite to establishing his entitlement to damages and his right to foreclose on the Leavings' property.

■ A holder is "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." TEX. BUS. & COMM.CODE ANN. § 1.201(21) (Vernon Supp.2004); *SMS Fin.*, 167 F.3d at 238. When an instrument is payable to an identifiable person, the "holder" is the person in possession if he is the identified person. TEX. BUS. & COMM.CODE ANN. § 1.201(21); *SMS Fin.*, 167 F.3d at 238. A holder of an instrument is a "[p]erson entitled to enforce" an instrument. *SMS Fin.*, 167 F.3d at 238.

■ A person can become the holder of an instrument when the instrument is issued to that person; or he can become a holder by negotiation. U.C.C. cmt. 1, TEX. BUS. & COMM.CODE ANN. § 3.201 (Vernon 2004). Negotiation is the "transfer of possession of an instrument ... by a person other than the issuer to a person who thereby becomes its holder." TEX. BUS. & COMM.CODE ANN. § 3.201(a); *SMS Fin.*, 167 F.3d at 238. "[I]f an instrument is pay-able to an identified person, negotiation requires transfer of possession of the instrument and its indorsement by the holder." TEX. BUS. & COMM.CODE ANN. § 3.201(b); *SMS Financial*, 167 F.3d at 238; *Jernigan v. Bank One, Tex., N.A.*, 803 S.W.2d 774, 776 (Tex.App.-Houston [14th Dist.] 1991, no writ). The indorsement must be written by or on behalf of the holder and on the instrument or on a paper so firmly affixed to it as to become part of it. *Jernigan*, 803 S.W.2d at 776. If an instrument not in the possession of the original holder lacks a written indorsement and proof of the chain of title, the person in possession does not have the status of a holder. *See id.* at 776–77.

■ A note may be transferred, however, even if it is not indorsed by the transferee; in that case, the transferee acquires whatever rights the transferor had in the note, but he does not become the holder. *See* TEX. BUS. & COMM.CODE ANN. § 3.201; *Waters v. Waters*, 498 S.W.2d 236, 241 (Tex.Civ.App.-Tyler 1973, writ ref'd n.r.e.). The transfer of title of a negotiable instrument received by the transferee without indorsement includes " 'such rights as the transferor has therein.' " 1FORM COMMERCIAL CODE, § 3.201:10, at 752). Thus, even if a person is not the holder of a note, he may still be able to prove that he is the owner and entitled to enforce the note, foreclose on collateral and obtain a deficiency judgment under common-law principles of assignment. *Waters*, 498 S.W.2d at 242. A person not identified in a note who is seeking to enforce it as the owner or holder must prove the transfer by which he acquired the note. *Jernigan*, 803 S.W.2d at 777; *Priesmeyer*, 917 S.W.2d at 939. An issue of material fact on the issue of ownership of a note is presented when there is an unexplained gap in the chain of title. *First Gibraltar Bank, FSB, v. Farley*, 895 S.W.2d 425,

428–29 (Tex.App.-San Antonio 1995, writ denied); *Jernigan,* 803 S.W.2d at 777.

In this case, to prove his entitlement to summary judgment as the *holder* of the Leavings' note, Mills had the burden of proving, as a matter of law, that the retail installment contract executed by the Leavings was the "note" referenced in each step of the chain of title, that the note was a negotiable instrument made payable to Solar Marketing, and that, by successive transfers of possession and indorsement, he became the holder of the note and was entitled to enforce it. To prove his right to foreclose on collateral and obtain a deficiency judgment as the *owner* of the note, Mills was required to prove the note and an unbroken chain of assignments transferring to him the right to enforce the note according to its terms. In either case, he was required to prove an unbroken chain of title. We first determine the nature of the note and of Mills' claim of title.

*Nature of the Note*

Section 3.104 of the Texas Uniform Commercial Code defines a note as an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:

(1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder;

(2) is payable on demand or at a definite time; and

(3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain

(A) an undertaking or power to give, maintain or protect collateral to secure payment;

(B) an authorization or power to the holder to confess judgment or realize on or dispose of collateral; or

(C) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

TEX. BUS. & COM.CODE ANN. § 3.104(a) (Vernon 2002). A note so defined is a negotiable instrument. *Id.* At the time the Leavings' note was made, Texas law provided:

Any writing to be a negotiable instrument within this chapter must

(1) be signed by the maker or drawer; and

(2) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this chapter; and

(3) be payable on demand or at a definite time; and

(4) be payable to order or bearer.

TEX. BUS. & COM.CODE ANN. § 3.104(a) (Vernon 1996).[6] Under both the prior and the current version of section 3.104, a note must contain an unconditional promise to pay a fixed amount of money on demand or at a definite time, and the note must be payable to order or to bearer.

■ In this case, the Leavings' obligation to pay Solar Marketing was conditioned in the retail installment contract upon the completion of the improvements described in the instrument. Specifically, the contract states that payments are to begin "60 days from date Completion Cer-

---

**6.** Section 3.104(a) was amended effective January 1, 1996 to include the revised definition of a negotiable instrument. Section 9 of the amending Act provided that an action or proceeding that commenced or a right that ac-

crued before the effective date of the Act was governed by the law in effect on the date the action or proceeding commenced or the right accrued. TEX. BUS. & COMM.CODE ANN. § 3.101 (Historical and Statutory Notes).

tificate (under FHA Title I) is signed by Buyer, which is estimated to be December 15, 1984." The contingency in the retail installment contract is cured by the completion certificate executed by the Leavings and Solar Marketing on December 10, 1984. In it, Solar Marketing certifies that "[a] copy of the contract or sales agreement has been delivered to the borrower and to the above financial institution," *i.e.,* Briercroft Service Corporation; that the work has been satisfactorily completed; and that "this contract contains the whole agreement with the borrower." The retail installment contract and the completion certificate thus merge and together constitute the note at issue in this litigation. *See Fish v. Tandy Corp.,* 948 S.W.2d 886, 898(Tex. App.-Fort Worth 1997, pet. denied) (merger occurs when parties to earlier agreement enter into subsequent written integrated agreement covering same subject matter).

 The note consisting of the Leavings' retail installment contract and completion certificate is not a negotiable instrument, however, since it is not made payable either "to bearer" or "to order" and, therefore, lacks an essential element of a negotiable instrument. *Ralls–Tex Mill, Inc. v. Plains White Truck Co.,* 446 S.W.2d 917, 919 (Tex.Civ.App.1969, writ ref'd n.r.e.); *Gen. Motors Acceptance Corp. v. Matson,* 336 S.W.2d 628, 630 (Tex. Civ.App.1960, no writ); *see also Ins. Agency Managers v. Gonzales,* 578 S.W.2d 803, 805 (Tex.Civ.App.-Houston [1st Dist.] 1979, no writ) (retail installment contract for home improvements was not negotiable instrument). Since this is so, we need not determine whether the other terms and conditions set out in the retail installment contract and completion certificate render the note non-negotiable.[7]

 Since the note is not a negotiable instrument, whenever Mills acquired it and under whatever terms he acquired it, he is not a holder and, therefore, cannot be a holder in due course entitled to take the instrument free of the Leavings' claims and defenses. TEX. BUS. & COMM.CODE ANN. § 3.306 (Vernon 2004) (a person taking an instrument, other than a person having rights of a holder in due course, takes subject to claims against the instrument, including claims for rescission); *see Gonzales,* 578 S.W.2d at 805 (such claims and defenses as maker of contract had against contractor who performed work under retail installment contract could be asserted against contractor's assignee); *Matson,* 336 S.W.2d at 630 (where retail installment contract given in part payment for automobile was not payable "to order" or "to bearer," it lacked essential element of negotiable instrument and was not negotiable; therefore, assignee took it subject to any claims and defenses that could be urged against payee).[8] We turn, therefore, to whether Mills has established that he is the owner of the note and entitled to enforce it against the Leavings, subject to

7. Nor is the trust deed executed by the Leavings a negotiable instrument; rather it is a security agreement designed to secure performance of the note by granting a mechanic's and materialman's lien on the solar heating system and the Leavings' residence. The trust deed states that the Leavings' agreement to pay is to be "evidenced by a note for [$8495.00] to be executed and delivered upon the completion of the improvements above described," and it states a number of terms and conditions that must be fulfilled before the lien becomes enforceable.

8. When even a negotiable instrument is transferred without indorsement, the assignee takes the note subject to the equities and defenses available against it in the hands of the assignor. *Gibbs v. Wheeler,* 306 S.W.2d 929, 933 (Tex.Civ.App.-Austin, 1957, writ ref'd n.r.e.).

their claims and defenses.[9]

*Ownership of the Note*

■ Mills has presented summary judgment proof establishing that the Leavings executed both the note and the trust deed on November 14, 1985. He has also presented summary judgment proof that Solar Marketing assigned the note and the trust deed to Briercroft Service Corporation on November 21, 1984, which in turn, assigned them to Briercroft Savings Association on December 10, 1984. Briercroft Savings Association then filed the trust deed in the real property records of Fort Bend County on December 18, 1984.[10]

■ Mills relies on his own affidavit testimony and that of Bell and Comstock to establish a chain of title to the Leavings' note and trust deed. Under Texas law, the transfer of a note may be proved by testimony rather than by documentation. *Priesmeyer*, 917 S.W.2d at 939; *Christian v. Univ. Fed. Sav. Ass'n*, 792 S.W.2d 533, 534 (Tex.App.-Houston [1st Dist.] 1990, no writ). However, to support summary judgment, affidavit testimony must affirmatively show that it is based on personal knowledge; it must be admissible in evidence; and it is inadequate unless it affirmatively shows that the affiant is competent to testify to the matters stated therein. TEX.R. CIV. P. 166a(f). The mere recitation that an affidavit is based on personal knowledge is inadequate if the affidavit does not positively show a basis for such knowledge. *Priesmeyer*, 917 S.W.2d at 939–40; *Geiselman*, 965 S.W.2d at 537.

In his own summary judgment affidavit, Mills testified that the facts in his motion for summary judgment were true and correct, including the assertion that he was "the owner and holder of a Retail Installment Contract and Contract for Labor and Materials and Trust Deed dated November 15, 1984." He also testified that the copies of those documents attached to his affidavit were true and correct copies of originals filed with the court. He further testified that the statement in the motion, that "[t]he Leavings' obligation was held by the Briercroft Savings and Loan Association which was eventually taken over by the FSLIC and OTS who sold the note through the RTC," was true and correct. However, nothing in Mills' affidavit shows the basis for his knowledge of the facts to which he testifies, and it is therefore, incompetent to prove these facts. *See Priesmeyer*, 917 S.W.2d at 939–40; *Geiselman*, 965 S.W.2d at 537.

Moreover, the documents Mills testifies to do not show the chain of title of the Leavings' note from "builder" to himself. Nothing in the documents attached to Mills' affidavit shows how Briercroft Savings and Loan Association acquired the

9. Mills claims that he is the owner and holder of the Leavings' note as transferee variously from the RTC, FDIC, FSLIC, and OTS and, therefore, takes it free of all claims and defenses. This contention is without merit. First, as shown below, there is no proof in the summary judgment record that Mills acquired the Leavings' note by transfer from the FDIC, RTC, FSLIC, or OTS. Second, even if Mills had produced such proof, the note is a retail installment contract, not a negotiable instrument. It states plainly on its face that "[a]ny holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof." The FDIC and RTC take notes free only of terms or agreements that are not apparent from the face of the instrument. *See NCNB Texas Nat'l Bank v. Johnson*, 11 F.3d 1260, 1267–68 (5th Cir. 1994) (explaining *D'Oench Duhme* doctrine).

10. The document reflecting these transfers, which is recorded at Volume 1577, page 373 of the official records of Fort Bend County, is stamped filed on both December 14 and December 18, 1989.

Leavings' note from Briercroft Savings Association or that these two entities are really one and not two; and nothing shows how Briercroft Services Corporation reacquired the note and thus had the capacity to transfer it to Old Republic. Nothing shows that the FSLIC, FDIC, RTC, or OTS ever acquired the Leavings' note or trust deed, as Mills avers; and nothing shows the basis for Mills' knowledge of the facts giving rise to his claim of such ownership.

 Apparently recognizing the deficiencies in his proof, Mill attached to his summary judgment motion the Bell Affidavit. In that affidavit, Bell testifies that he is a "Resolution Specialist" for the FDIC as successor to the RTC, that he has examined "the attached copy of the Transfer and Assignment Agreement recorded in the public real estate records of Fort Bend County, Texas," that that agreement was signed by Jon G. Moyer for Briercroft Service Corporation, that Moyer had full authority to execute the transfer agreement, and that "the Loan Sale Agreement of October 23, 1995 between Briercroft Service Corporation and the Resolution Trust Corporation as Receiver for Beacon Federal Savings Association as sellers and Old Republic Insured Financial Acceptance Corporation as purchaser is permanently recorded with the Resolution Trust Corporation as RTC Master Contract Nos. 37624 (Beacon) & 37625 (Briercroft) and stored as Case # DOSSWF–SA–5615." This affidavit says nothing whatsoever about the Leavings' note or trust deed; nor do its deficiencies stop there.

 Bell fails to state what his role is at the FDIC that would afford him the basis for personal knowledge of the facts

to which he testifies. He fails to state that he has personal knowledge that the FDIC or RTC acquired the Leavings' note or, *a fortiori*, how either agency acquired it. Indeed, he does not state that he has any personal knowledge of the Leavings' note, that he has any personal knowledge of the October 23, 1995 Loan Sale Agreement, other than that it is stored in RTC records,[11] or that he has any personal knowledge that the Loan Sale Agreement conveyed the Leavings' note from Briercroft Service Corporation to Old Republic Insured Financial Acceptance Corporation. Nor does he indicate any knowledge of the relationship, if any, either the RTC or the FDIC bears to Briercroft Service Corporation. Moreover, the transfer and assignment agreement executed by Jon G. Moyer, which Bell testifies is attached to his affidavit, is, in fact, not attached to his affidavit; it is attached only to Mills' affidavit; and Bell does not state how he knows that Moyer had the authority to execute the agreement, rendering this statement hearsay. Bell's affidavit is, therefore, not competent summary judgment evidence of the transfer of the Leavings' note or trust deed from Briercroft Service Association to Old Republic.

Neither the Bell affidavit nor any other summary judgment evidence proves any transfer of the Leavings' note and trust deed from Briercroft Service Corporation to Briercroft Savings Association or from Briercroft Savings Association to the RTC or FDIC, or, as Mills states in his own sworn summary judgment motion, to "FSLIC and the OTS." Thus, Mills has failed to produce competent summary judgment proof that the Leavings' note was transferred in an unbroken chain of

11. An affiant's statement that he has personal knowledge that a loan sale agreement is stored in RTC records does not show the

FDIC's ownership of a note. *FDIC v. McCrary*, 977 F.2d 192, 194 (5th Cir.1993).

title from Solar Marketing to Old Republic.

Nor are these the only gaps in the chain of title of the note and trust deed. Mills also attests through his sworn summary judgment motion that the affidavit of Jo Allyn Comstock for Old Republic "attest[s] to sale and assignment to JAMES C. MILLS" of the Leavings' Note. It does not. Comstock testifies only that she is the keeper of the records of Old Republic, and the only facts of which she claims to have personal knowledge are that an attached document is a true and correct copy of the Loan Sale Agreement, that it is a permanent part of the files and records of Old Republic, and that she is aware that her affidavit will become a permanent part of the records of James C. Mills and Multimortgage Bancorp. and will be used as an exhibit in a court of law. Once again, the October 23, 1995 Loan Sale Agreement is not attached.

Since the Loan Sale Agreement is not attached to the Comstock affidavit or otherwise included in the summary judgment record, there is no evidence that it transferred the Leavings' note and trust deed from Briercroft Service Corporation to Old Republic. Even more importantly, in her affidavit Comstock does not attest to any personal knowledge of the Leavings' note and trust deed or to any facts showing her personal knowledge of its transfer to Old Republic or from Old Republic to Multimortgage Bancorp. or Mills. Comstock's affidavit is thus no evidence of these transfers, and Mills' own affidavit testimony that the Comstock affidavit "attest[s] to sale and assignment to James C. Mills" of the note and trust deed is incorrect.

■ Finally, while the summary judgment record does contain an assignment of the *trust deed* by Old Republic to Multimortgage Bancorp., dated December 6, 1996, there is no evidence that the *note* was transferred to Multimortgage Bancorp. Nor is there any evidence that either the note or the trust deed was legally transferred from anyone to Mills. Mills' affidavit testimony that he is the legal owner of the Leavings' note is conclusory and not substantiated by any summary judgment evidence of the basis for his claim. A conclusory affidavit is not competent summary judgment proof that the affiant is the owner or holder of a note. *See* TEX.R. CIV. P. 166a(f); *Tex. Div.-Tranter, Inc. v. Carrozza*, 876 S.W.2d 312, 314 (Tex.1994); *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex.1984); *Geiselman*, 965 S.W.2d at 537)(affidavit of vice president of assignee of promissory note that assignee was legal owner of notes allegedly transferred from FDIC and lost was incompetent summary judgment evidence where there was no testimony in affidavit to account for loss or destruction of notes); *Jernigan*, 803 S.W.2d at 777 (appellant's bare allegation of ownership of note with gap and inconsistency in chain of title held insufficient to establish ownership as a matter of law). Mills has thus failed to prove that he is the owner of the Leavings' note or, therefore, that he has the right to enforce it.

Since Mills has failed to show that he is either the owner or the holder of the note or of the trust deed, we hold that Mills has failed to establish his entitlement to summary judgment.[12] We sustain appellant's

---

12. Virtually the same scenario was presented in *Shepard v. Boone*, 99 S.W.3d 263 (Tex.App.-Eastland 2003, no writ), a wrongful foreclosure case brought by Elbert G. Boone, Jr. and Mary Ella Boone against George B. Shepard and Mills, individually and d/b/a Multimortgage Bancorp. *Id.* at 264. Mills foreclosed on the Boones' residence pursuant to a contract the Boones executed in 1986 for improvements to their home, a deed of trust

first point of error. Given this disposition, we need not address appellant's remaining points of error.

## Conclusion

We reverse and remand for further proceedings consistent with this opinion.

covering their residence, and a promissory note made payable to Briercroft Savings Association in monthly installments. *Id.* at 266. The trial court voided the trustee's sale of the Boones' home and the trustee's deed from Mills to Shepard; and the court of appeals affirmed, following an analysis similar to this Court's. *Id.*