**Affirm in part and Reverse in part; and Remand; Opinion Filed May 14, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

### No. 05-13-00113-CV

_____

### RICHARD A. MYERS AND THOMAS J. WOUTERS, Appellants
### V.
### HCB REAL HOLDINGS, LLC, Appellee

_____

**On Appeal from the 68th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-11-02904**

_____

## MEMORANDUM OPINION
Before Justices Francis, Evans, and Stoddart
Opinion by Justice Evans

Richard A. Myers and Thomas J. Wouters appeal the trial court's judgment against them for breach of a guaranty agreement. The guarantors bring four issues contending the trial court erred in (1) failing to dismiss the case, (2) denying their motion to determine the fair market value of the property, (3) granting summary judgment despite the existence of genuine issues of material fact, and (4) granting HCB Real Holdings, LLC summary judgment on its request for attorney's fees. We affirm the trial court's judgment on HCB's claim for breach of the guaranty. We reverse the award of attorney's fees and remand the cause for further proceedings.

### I. FACTUAL BACKGROUND

At issue in this case is a payment guaranty for a promissory note between Hillcrest Bank, a Kansas state banking association, ("Hillcrest State") and RCC Indian Creek, Ltd. Under the terms of the guaranty, Richard A. Myers and Thomas J. Wouters agreed that, in the event of a

default by Indian Creek, they would each be liable to pay Hillcrest State, its successors, and assigns, 50% of the remaining indebtedness. The purpose of the loan to Indian Creek was for the acquisition and development of property and the note was secured by a deed of trust on the property acquired.

It is undisputed that Indian Creek defaulted on payment of the note. Subsequent to the default, Hillcrest State was closed and placed into receivership by the Kansas State Bank Commissioner and the FDIC. Hillcrest Bank, N.A. then entered into an agreement with the FDIC under which it purchased "all right, title, and interest of the [FDIC] in and to all of the assets . . . of [Hillcrest State] whether or not reflected on the books of [Hillcrest State] as of Bank Closing." Hillcrest N.A. presented evidence that it then assigned the loan and guaranty to its wholly owned subsidiary, HCB Real Holdings, LLC. HCB foreclosed on the property under the deed of trust and sold it at public auction for $4,003,933 leaving an alleged deficiency.

On March 11, 2011, Hillcrest N.A., brought this suit for breach of contract alleging that the guarantors had failed to pay under the terms of the guaranty agreement. The company filed a motion for summary judgment attaching the affidavit of Tracy Pancost, senior vice president in its Special Assets Group. In her affidavit, Pancost stated that Hillcrest N.A. conducted the foreclosure on the property and that it was seeking to enforce the guarantors' obligations under the guaranty. The company argued it was entitled to summary judgment on its claim because there was no issue of material fact as to the guarantors' liability and they had expressly waived any right to an offset against their liability under section 51.003 of the Texas Property Code. The motion was never set for a hearing.

On January 10, 2012, the guarantors filed an amended answer asserting for the first time that Hillcrest N.A. could not show that it was the owner and holder of the guaranty. The guarantors also included in their answer a motion to determine the fair market value of the

foreclosed property for purposes of obtaining an offset under section 51.003 of the Texas Property Code.

Shortly thereafter, HCB filed a first amended petition naming itself as plaintiff and stating that it was the assignee of the loan documents at issue, as well as a wholly owned subsidiary of Bank Midwest, N.A. which had merged with and succeeded Hillcrest N.A. HCB then filed a motion for summary judgment on essentially the same grounds as those urged in the motion filed previously by Hillcrest N.A. In addition, HCB's motion addressed its status as the owner and holder of the note and guaranty. HCB's motion included a new affidavit by Pancost that included testimony about the various transfers of the loan documents and attached authenticated copies of documents discussed in the affidavit. The motion was set to be heard on February 10, 2012.

On February 2, the guarantors filed a motion to dismiss. The guarantors argued that the trial court did not have jurisdiction over the cause because the original plaintiff, Hillcrest N.A., failed to show that it had standing to sue as the owner, holder, or beneficiary of the note or guaranty. Five days later, the guarantors filed a motion to continue the hearing on HCB's motion for summary judgment contending they needed time to conduct discovery with respect to HCB.

On February 23rd, the trial court signed an order granting HCB summary judgment on the offset issue. The court did not, however, rule on the other issues and instead granted the guarantors' motion for continuance to conduct discovery. HCB subsequently filed an amended motion for summary judgment including another new affidavit by Pancost discussing both the transfers of the loan documents and how Hillcrest N.A. was mistakenly named as the plaintiff in the original petition and attached authenticated copies of the documents discussed in the affidavit. Pancost further testified that any statements she made in her original affidavit relating to Hillcrest N.A. were made in error and those statements were superseded by her current

testimony including that HCB was the real party in interest in the suit. The amended motion for summary judgment also included a second affidavit by a bank officer calculating the current amount owed under the note and stating that HCB was the current owner and holder of the loan and the assignee of the rights under the guaranty. The guarantors filed a response arguing that genuine issues of material fact existed as to whether HCB was the owner or holder of the note and/or beneficiary of the guaranty.

A hearing was held on HCB's amended motion for summary judgment on October 29, 2012. The trial court granted HCB's motion and awarded the company $873,786.50 in actual damages, $15,000 in attorney's fees, and pre and post-judgment interest. The guarantors brought this appeal.

## II. ANALYSIS

### A. Owner/Holder Status

#### 1.) Evidence

In their first issue, the guarantors contend the trial court erred in not dismissing this suit because "[t]he record is devoid of any evidence that the Note and Guaranty actually was [sic] transferred from the FDIC to Hillcrest NA, for Hillcrest NA to then subsequently assign the Note and Guaranty to HCB." The guarantors reurge this argument in their third issue as a predicate to their arguments challenging the foreclosure sale arguing that there are genuine issues of material fact regarding HCB's status as the owner or holder of the note and guaranty. The parties brief this as standing and capacity. We must review the trial court's decision that HCB proved it was the owner and holder of the note, so we will not parse the procedural issues separately from the substantive.

A party not identified in a note who is seeking to enforce it as the owner or holder must prove the transfer by which it acquired the note. *See Leavings v. Mills*, 175 S.W.3d 301, 309

–4–

(Tex. App.—Houston [1st Dist.] 2004, no pet.). An unexplained gap in the chain of title creates a genuine issue of material fact. *Id*. But even if a party is not the holder of a note, it may still be able to prove that it is the owner and entitled to enforce the note, foreclose on collateral and obtain a deficiency judgment under common law principles of assignment. *Id*; *see also, Manley v. Wachovia Small Bus. Capital*, 349 S.W.3d 233, 240 (Tex. App.—Dallas 2011, pet. denied). In this case, the guarantors argue that the asset purchase agreement between the FDIC and Hillcrest N.A. does not conclusively show that Hillcrest N.A. became the owner or holder of the note or the beneficiary of the guaranty at issue. HCB responds that the unambiguous terms of the purchase agreement together with the affidavits of two bank officers clearly demonstrate that the note and guaranty, as well as the rights thereunder, were purchased by and transferred to Hillcrest N.A.

Under the section of the purchase agreement entitled "Assets Purchased by Assuming Institution," it states that "with the exception of certain assets expressly excluded in Sections 3.5 and 3.6, [Hillcrest N.A.] hereby purchases from the [FDIC], and the [FDIC] hereby sells, assigns, transfers, conveys, and delivers to [Hillcrest N.A.], all right, title, and interest of Receiver in and to all of the assets … of [Hillcrest State] whether or not reflected on the books of [Hillcrest State] as of Bank Closing." The guarantors point to section 3.6(a)(ii)(b) as raising a fact issue on whether the loan at issue was excluded from the purchase. Section 3.6(a)(ii)(b) states that the FDIC *may* refuse to sell to Hillcrest N.A. any asset that the FDIC determines to be "the subject of, or potentially the subject of, any legal proceedings." Because the Indian Creek loan was in default at the time Hillcrest State was placed in receivership, that asset was potentially the subject of legal proceedings. Although section 3.6(a)(ii)(b) arguably gave the FDIC the prerogative to exclude the Indian Creek loan from the asset sale, the guarantors point to no evidence that the loan was actually excluded. The fact that the FDIC had the right to refuse

to sell the loan does not raise a fact issue as to whether this actually occurred. Indeed, the purchase agreement included schedules of certain assets excluded from the sale and the Indian Creek loan was not among those assets. There is also nothing to indicate that the FDIC chose to retain assets that were not listed in those schedules. To the contrary, the summary judgment evidence shows that the Indian Creek loan was specifically listed on a schedule of "Shared Loss Loans" that were transferred to Hillcrest N.A. pursuant to the purchase agreement and governed by a commercial shared-loss agreement that supplemented the purchase agreement.

In addition to the purchase agreement, HCB also submitted affidavit testimony in support of its amended motion for summary judgment showing that the Indian Creek loan was transferred to Hillcrest N.A. under the purchase agreement and that the loan was later transferred to HCB. Under Texas law, the transfer of a note may be proved by testimony rather than documentation if the testimony is based on personal knowledge, admissible into evidence, and the affiant is competent to testify. *See Leavings*, 175 S.W.3d at 312. In her summary judgment affidavit, Tracy Pancost, testified that she was an officer of Hillcrest State, Hillcrest N.A., and HCB's parent company, Bank Midwest, during the relevant time periods and that she was responsible for the Indian Creek loan, the review and maintenance of the loan documents, and the foreclosure sale conducted on the property. Pancost explained that as part of her duties as an employee and officer of Bank Midwest she acted on behalf of its subsidiary, HCB, as regards this and other loans and Bank Midwest maintained the loan documentation for HCB. Pancost stated that the rights to the Indian Creek loan, including the guaranty, were included in Hillcrest N.A.'s purchase of assets from the FDIC and further testified that Hillcrest N.A. subsequently transferred and assigned those rights to HCB. Pancost testified that "HCB Real Holdings, LLC is the current holder of the Loan as the successor/assignee from Hillcrest Bank, N.A., the successor-in-interest to Hillcrest [State]." Attached to Pancost's affidavit were true and correct

–6–

copies of the original loan documents and guaranty as well as the purchase agreement between the FDIC and Hillcrest N.A. and the assignment of the loan documents to HCB.

HCB also submitted the affidavit of Freida Powers. Powers was senior vice president of loan operations at Hillcrest State when it was placed into receivership by the FDIC. After Hillcrest State closed, she became senior vice president in loan operations for Hillcrest Bank N.A.. When Hillcrest Bank N.A. merged with Bank Midwest, Powers became a senior vice president in the loan operations department at Bank Midwest. At all relevant times, Powers was also a senior vice president of HCB. Powers stated she was responsible for the loan operations of the Indian Creek loan including maintenance of the loan history and calculating the outstanding indebtedness. Powers further stated that she personally reviewed the loan history and that HCB was the current owner and holder of the loan and the assignee of the rights under the guaranty by virtue of the transfers, purchases and assignments of the loan from Hillcrest State to the FDIC to Hillcrest N.A. to HCB. Both the Powers and Pancost affidavits affirmatively demonstrate the basis of their personal knowledge and set forth sufficient facts to show how the rights under the Indian Creek loan and guaranty were transferred and assigned to Hillcrest N.A. and subsequently to HCB. The guaranty signed by the guarantors specifically contemplates the assignment of the lender's rights when it states that the guaranty is for the benefit of Hillcrest State, "its successors and assigns."[1] Because HCB submitted competent summary judgment evidence showing the chain of transfers and assignments from Hillcrest State to HCB, and the

---

[1] The guarantors state in their brief that it is "arguable" that the successors and assigns language does not extend to purchasers of a note and guaranty after a bank failure. The guarantors cite no authority for this proposition, however, and we have found none.

guarantors failed to produce any controverting evidence, we conclude HCB conclusively demonstrated its status as owner and holder of the note and guaranty.[2]

### 2.) Plaintiff Substitution

The guarantors next argue that HCB lacks standing because the misidentification of Hillcrest N.A. as the real party in interest in the original petition could not be cured by amending the petition to name HCB as the plaintiff. HCB responds that the error in the original petition was a misnomer rather than a misidentification and, therefore, the amendment was sufficient to name the correct plaintiff. In general, issues of misidentification and misnomer arise in the context of a limitations defense and concern whether an amended petition naming the correct party will relate back to the original filing or be deemed untimely. *See e.g. In re Greater Houston Orthopedic Specialists, Inc.*, 295 S.W.3d 323, 326 (Tex. 2009). In this case, however, no limitations issue is presented. The amended petition naming HCB as plaintiff was filed well within the limitations period for a breach of contract claim. Accordingly, the only issue is whether HCB was permitted to substitute itself for Hillcrest N.A. as plaintiff in this case by amendment.

A plaintiff may amend a petition to substitute new parties for those named so long as the addition by amendment does not unreasonably delay trial of the case or prejudice the defendant. *See Int'l Shelters, Inc. v. Pinehurst Inv. Corp.*, 474 S.W.2d 497, 499 (Tex. App.—Corpus Christi 1971, writ dism'd).[3] Amendment is permissible where the substitution of a new party plaintiff does not inject a matter that is materially different in substance or form into the lawsuit nor

---

[2] In their reply brief, the guarantors raise new challenges to the summary judgment evidence not asserted in their original brief on appeal. We will not consider issues raised for the first time in a reply brief. *See Humphries v. Advanced Print Media*, 339 S.W.3d 206, 208 (Tex. App.—Dallas 2011, no pet.). Furthermore, these challenges consist entirely of unsupported speculation regarding the veracity of the documentary evidence.

[3] We note that, although neither Hillcrest N.A. nor HCB sought leave of court to substitute HCB as the plaintiff in this action, the guarantors did not object or move to strike HCB's pleading on this basis.

appreciably alter the rights and obligations of the parties to the prejudice of the defendants. *See id.* at 500. In this case, the substance of the lawsuit remained the same and guarantors have provided no evidence to show how the change in plaintiff prejudiced them in any way.

The guarantors contend that, because Hillcrest N.A. was not the owner or holder of the note at the time it filed suit, the pleadings could not be amended to cure the defect. In support of this argument, the guarantors cite *Gonzalez v. Greyhound Lines, Inc.*, 181 S.W.3d 386, 393 (Tex. App.—El Paso 2005, pet. denied). In *Gonzalez*, the court held, without authority or discussion, that "[s]ince the [plaintiffs] collectively lacked standing to sue the defendants in their lawsuit, their petition could not be amended to confer subject matter jurisdiction on the trial court." *Id.* Importantly, the plaintiffs in *Gonzalez* did not attempt to amend their lawsuit to name a new party plaintiff before the judgment of dismissal was rendered against them. In response to the motion to dismiss, they argued solely that they were the correct parties with standing to sue. It was only on appeal that they requested an opportunity to amend. In this case, the pleadings were amended to name the correct plaintiff long before any judgment in the case was signed.

Even if the defect here could not be "cured" by amendment, at the very least the filing of the amended petition effectively initiated a new suit between HCB and the guarantors. *See Roberson v. McIlhenny, Hutchins & Co.*, 59 Tex. 615, 617 (Tex. 1883). After the amendment was filed, the guarantors appeared and filed numerous pleadings thereby obviating the need for service of process. *Id.*; *Exito Elecs. Co. v. Trejo*, 142 S.W.3d 302, 304 (Tex. 2005). All substantive proceedings took place after HCB became the plaintiff and the summary judgments were based on motions filed by HCB. We conclude, therefore, HCB was properly before the court as plaintiff in this suit and that the trial court correctly denied the guarantors' motion to dismiss. We resolve the guarantors first issue against them.

## B. Waiver of Offset Claim

In their second issue on appeal, the guarantors contend the trial court erred in denying their motion to determine the fair market value of the foreclosed property under section 51.003 of the Texas Property Code.  Under section 51.003,

> [a]ny person against whom [a deficiency] recovery is sought by motion may request that the court in which the action is pending determine the fair market value of the real property as of the date of the foreclosure sale.... If the court determines that the fair market value is greater than the sale price of the real property at the foreclosure sale, the persons against whom recovery of the deficiency is sought are entitled to an offset against the deficiency in the amount by which the fair market value ... exceeds the sale price.

TEX. PROP. CODE ANN. § 51.003 (West 2014).  HCB contends the guaranty signed by the guarantors waived their rights to seek an offset against the deficiency.

> The guaranty signed by the guarantors states that,

> [i]n the event of any default by [Indian Creek] in payment of the Indebtedness, after the expiration of any applicable cure or grace period, Guarantors agree, on demand by Lender or the holder of the Note, to pay the Indebtedness regardless of any defense, right of set-off or claims which Borrower or Guarantors may have against Lender or the holder of the Note.

The guaranty further states that guarantors

> . . . (c) waive any defense, right of set-off or other claim which such Guarantor or Borrower may have against Lender, or the holder of the Note, [and] (d) waive any and all rights such Guarantor may have under any anti-deficiency statute or other similar protections . . . .

This court has repeatedly held, and the Texas Supreme Court recently confirmed, that such language in a guaranty is sufficient to waive the protections afforded by section 51.003.  *See Moayedi v. Interstate 35/Chisam Rd., L.P.* 438 S.W.3d 1, 6–8 (Tex. 2014).  The guarantors argue extensively that this case is distinguishable because the guaranty agreement uses the terms "defenses," "set-offs," and "offsets" at different points, but the waiver provision only includes the terms "defenses" and "set-offs."  Based on this, the guarantors argue the waiver provision was not intended to cover the right of "offset" provided by section 51.003.

We first note that the terms "set-off" and "offset" are used interchangeably under Texas law. *See Nussbaum v. OneWest Bank, FSB*, No. 05-13-00081-CV, 2014 WL 2151996 (Tex. App.—Dallas May 21, 2014, pet. denied) (mem. op.). The fact that the guaranty agreement uses both terms does not create a fact issue regarding its meaning. In addition, the guarantors ignore the fact that the guaranty includes a specific waiver of "any and all rights [they] may have under any anti-deficiency statute or other similar protections." Section 51.003 is an anti-deficiency law. *See Moayedi*, 438 S.W.3d at 6. Accordingly, the guaranty unambiguously waives the guarantors' right to seek an offset under section 51.003.

The guarantors also contend the guaranty does not waive their right to seek an offset because the language was insufficient to waive a statutory right accruing in the future. In making this argument, the guarantors rely on *Salvagio v. Madison Realty Capital, L.P.*, No. H-11-2183, 2012 WL 5397190 (S.D. Tex. Nov. 5, 2012). But *Salvagio* contradicts, rather than supports the guarantors' argument. In *Salvagio*, the court held that waiver language referencing offset rights that the guarantor "has" or "ever had" waived only rights that existed at the time the guaranty was signed. *Id*. at *3. The court contrasted the language before it with language waiving offset rights that "may be available" or that the guarantor "may or might have" which has been held effective to waive offset rights accruing in the future. *Id*. The guaranty signed by the guarantors in this case waived all rights they "may have" under any anti-deficiency statute. As stated in *Salvagio*, this language waived prospective offset rights as well as those rights existing at the time the guaranty was signed. We resolve the guarantors' second issue against them.

## C. Issue of Fact Regarding Foreclosure

In their third issue on appeal, the guarantors contend there is a genuine issue of material fact regarding the propriety of the foreclosure because there is conflicting evidence on what

entity conducted the foreclosure sale. The guarantors repeat many of the arguments they presented in their first issue on the evidence showing owner and holder status. The "conflicting evidence" the guarantors point to are all alleged inconsistencies in the summary judgment motions and affidavits. However, none of these alleged inconsistencies raises a fact issue.

The guarantors first point to the fact that, in Pancost's affidavit, she states in one paragraph that HCB is the current owner and holder of the note, but in a later paragraph "states that the Guaranty is a valid and enforceable agreement between Hillcrest State and [guarantors]." This argument is disingenuous. Pancost's actual affidavit testimony was that "[t]he Guaranty is a valid and enforceable agreement between Hillcrest [State], *its successors and assigns*, and [guarantors]." Pancost clearly explains how HCB was an assignee of guaranty. Accordingly, there is nothing inconsistent in this testimony.

The guarantors next argue there is conflicting testimony about whether Hillcrest N.A. or HCB conducted the foreclosure sale. This argument is also somewhat disingenuous. While it is true that Pancost originally testified the foreclosure sale was conducted by Hillcrest N.A., she later corrected that testimony to state she had made a mistake and that HCB, a wholly owned subsidiary, conducted the foreclosure sale. In discussing the error, Pancost stated

> [t]his lawsuit was originally filed in the name of Hillcrest Bank, N.A. because the bank believed that it was still the owner and holder of the Note and rights under the Guaranty. However, after learning that the Note and other Loan documents, including the Guaranty, had been transferred to HCB Real Holdings, LLC (as described above) and remained with HCB Real Holdings, LLC, the lawsuit was amended to include the proper party seeking to enforce the obligations under the Guaranty – HCB Real Holdings, LLC. Thus the information contained in my prior affidavit . . . is intended to be completely superseded by the information contained herein, which is true and correct. The information contained in my prior affidavit relating to Hillcrest Bank, NA was inadvertently included in error. I have checked the available records, attached hereto, which clearly demonstrate that HCB Real Holdings, LLC is the party in interest.

–12–

This correction of earlier testimony does not create an inconsistency giving rise to an issue of fact on who conducted the sale based on the timing of an assignment between a parent entity and its wholly owned subsidiary.[4]

The guarantors also attempt to create a fact issue by asserting that Powers applies an incorrect interest rate when calculating the amount owed on the Note in her affidavit. The guarantors do not explain, however, how this creates a fact issue regarding HCB's status as owner and holder. Therefore, nothing is presented for our review.

Finally, the guarantors concede that they are not directly challenging the propriety of the foreclosure with respect to whether the obligations under the deed of trust were met because they did not raise this issue in the trial court below. Appellant's contend they are arguing only that there is a fact issue about whether HCB conducted the foreclosure sale. As discussed above, the summary judgment evidence conclusively shows that HCB conducted the sale. We resolve the guarantors' third issue against them.

**D. Attorney's Fees**

In their fourth issue, the guarantors contend the trial court erred in awarding HCB summary judgment on its request for attorney's fees. We agree. An award of attorney's fees in a summary judgment is improper unless the evidence of the reasonableness of the fees is uncontroverted and the amount of the fees is conclusively established. *See Guity v. C.C.I. Enter., Co.*, 54 S.W.3d 526, 528 (Tex. App.—Houston [1st Dist.] 2001, no pet.). When the amount of attorney's fees is not conclusively established, the attorney's fees question may be severed and remanded for trial. *Id.*

---

[4] The guarantors similarly note that the original and amended motions for summary judgment conflict because the former lists Hillcrest N.A. as the owner of the loan and the latter states that HCB owns the loan. The amended motion was filed to correct the same mistake of fact explained in Pancost's affidavit and does not create a fact issue.

In this case, HCB submitted an affidavit in support of its request for attorney's fees stating that $53,714.75 was a reasonable amount for the legal services rendered. The guarantors submitted an opposing affidavit in which their expert stated that "a reasonable fee would be no more than $15,000." Although the trial court awarded HCB only $15,000 in attorney's fees, nothing in the summary judgment evidence conclusively established $15,000 as the proper amount. HCB did not request or prove the reasonableness and necessity of that amount and the guarantors' expert stated only that an amount in excess of $15,000 would be unreasonable. Absent conclusive and uncontroverted evidence of an amount certain, the trial court necessarily made a fact finding when it awarded HCB $15,000 as its reasonable attorney's fees. Findings of fact have no place in a summary judgment proceeding. *See IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp*, 938 S.W.2d 440, 441 (Tex. 1997). Because there was no specific amount that was uncontroverted, there was a genuine issue of material fact as to the amount of attorney's fees to which HCB was entitled. *See also Affordable Motor Co., Inc. v. LNA, LLC*, 351 S.W.3d 515, 522 (Tex. App.—Dallas 2011, pet. denied).[5] We resolve the fourth issue in favor of the guarantors.

## CONCLUSION

We reverse the award of attorney's fees and remand the cause to the trial court for further

---

[5] The facts in *Affordable Motor*, are nearly identical to those presented here. In *Affordable Motor*, the appellee requested the trial court award it $28,500 in attorney's fees and conditional appellate fees. *Id*. at 522. The court awarded $1,800 in attorney's fees through trial and $9,000 in conditional appellate fees. *Id*. at 519. We concluded that appellant's opposing affidavit stating that an award of fees "should be no more than $1,800, and conditional appellate fees should be no more than $4,000 and $5,000 [for an appeal to the court of appeals and the supreme court] respectively," created a fact issue on the proper amount of fees rather than establishing those amounts as a matter of law. *Id*. at 522. Although we also noted that the appellee did not seek summary judgment on the attorney's fees issue in the trial court, the absence of that ground in the summary judgment motion was not the basis of our decision to reverse the award.

–14–

proceedings consistent with this opinion. We affirm the trial court's judgment in all other respects.

/David Evans/

DAVID EVANS
JUSTICE

130113F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

RICHARD A. MYERS AND THOMAS J. WOUTERS, Appellant

No. 05-13-00113-CV     V.

HCB REAL HOLDINGS, LLC, Appellee

On Appeal from the 68th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-11-02904.
Opinion delivered by Justice Evans. Justices Francis and Stoddart participating.

     In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's judgment awarding attorney's fees. In all other respects, the trial court's judgment is **AFFIRMED**. We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

     It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 14th day of May, 2015.