**Affirmed and Opinion Filed March 22, 2023**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-21-00306-CV

### TYVON C. SMITH AND TAMARA J. SMITH, Appellants
### V.
### YELLOWFIN LOAN SERVICING CORP., AS SUCCESSOR IN INTEREST TO HOMETRUST MORTGAGE COMPANY, Appellee

**On Appeal from the County Civil Court at Law No 2**
**Harris County, Texas**
**Trial Court Cause No. 1156795**

## MEMORANDUM OPINION
Before Justices Pedersen, III, Carlyle, and Garcia
Opinion by Justice Pedersen, III

In this lawsuit to enforce a promissory note, appellants Tyvon C. Smith and

Tamara J. Smith complain the trial court erred in granting appellee Yellowfin Loan

Servicing Corporation's traditional motion for summary judgment.[1] They argue

appellee lacks standing, the note is not negotiable, the action is time-barred,

---

[1] This appeal originally was filed in the First District Court of Appeals in Houston and was docketed as cause number 01-21-00194-CV. The appeal was transferred to this Court pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001. Because this is a transferred case, we apply precedent of the First Court of Appeals to the extent it differs from our own. *See* TEX. R. APP. P. 41.3; *Vo v. Harris Cty. Comm'rs Court*, No. 05-21-00307-CV, 2022 WL 4376714, at *1 n.1 (Tex. App.—Dallas Sept. 22, 2022, pet. denied) (mem. op.).

appellee waived relief by waiting too long to judicially enforce the note, appellee failed to prove the amount owed, and the trial court failed to apply summary judgment standards and controlling law. We affirm the trial court's judgment.

Background

Appellants purchased their home on November 28, 2005. They financed the purchase through Hometrust Bank, F.S.B., with two loans, which appellants call the "first loan" and the "note." The first loan was in the amount of $109,850.00. The note was in the amount of $29,325.00 plus interest and is captioned "purchase money note (fixed rate–second lien)." The first loan and the note were secured by their own deeds of trust.

Appellants became delinquent in payment on both notes, and the first loan was foreclosed on February 5, 2008. The sale price at foreclosure was $120,739.36. That amount was insufficient to pay off the first loan and the note.

The note was transferred to various entities through a series of transactions. Neither Hometrust nor its successors—until appellee—sued to enforce the note.

Appellee initially contacted appellants in a January 14, 2020 letter. The letter stated, "the amount of the debt as of 08/29/2019 is $25,738.81." On February 26, 2020, appellee sent appellants notice of appellee's intent to accelerate payment of the note. The notice stated, in part:

> Yellowfin Loan Servicing Corporation has agreed to waive and forgive the monthly installment payments through 6/1/2019. Yellowfin Loan Servicing is not seeking to collect any waived or

forgiven payments, and the Mortgagor(s) is no longer obligated to pay those waived or forgiven payments. Yellowfin Loan Servicing is only seeking to recover payments due on and after 7/1/2019. No amounts sought to be recovered are outside of the applicable statute of limitations. The new post waiver principal balance, as of 7/1/2019, is $24,909.60.

On March 25, 2020, appellee sent appellants a letter providing notice of acceleration. In it, appellee stated, "nothing less than the payment in full of the entire accelerated principal balance will be accepted." The record does not suggest the note was previously accelerated.

Appellee filed its original petition in this lawsuit on July 13, 2020. Appellants filed a plea to the jurisdiction, original answer, and counterclaim on August 10, 2020. The counterclaim alleged violation of the Texas Debt Collection Practices Act. *See* TEX. FIN. CODE ANN. § 392.001 *et seq*. Appellants sought actual and exemplary damages. Appellee filed its original answer to appellants' counterclaim on September 1, 2020. Appellee moved for traditional summary judgment on its claim and on appellants' counterclaims and statute-of-limitations defense on October 30, 2020. Appellants responded to the motion for summary judgment on November 17, 2020. The trial court entered summary judgment in favor of appellee on January 18, 2021. The summary judgment awarded appellee $24,909.60 as the accelerated principal amount due under the note; $2,890.00 for attorney's fees; costs; and post-judgment interest. The judgment recited, "This judgment disposes of all claims and all parties, is a final judgment, and is

appealable. All relief not expressly granted in this judgment is denied." Appellants filed a motion for new trial and a second plea to the jurisdiction on February 15, 2021. The record does not contain orders on appellants' motion for new trial or second plea to the jurisdiction. Appellants filed their notice of appeal on April 16, 2021. The notice of appeal recited that appellants appeal the January 18, 2021 judgment.

## Issues Presented

Appellants present eight issues for review, which we restate verbatim. We address overlapping issues together.

1. Does any court have jurisdiction to hear Yellowfin's claim where Yellowfin could not prove it was the owner of the non-negotiable instrument it wanted to enforce?

2. Was the summary judgment below void because it failed to meet the standards in TEX. R. CIV. P. 166a and failed to follow relevant precedent?

3. Was there just a single transaction between Hometrust Mortgage Company as the lender and the Smiths as the borrower when both simultaneous loans between the parties were contractually included in the one Loan Agreement that was used to finance just one house?

4. Is the two-year limitations period in TEX. PROP. CODE § 51.003 applicable to the Note when there was only one lender who financed the purchase of the property and the foreclosure of the First Loan by the lender voided the lender's lien for the Note?

5. Is the four-year limitations period for debt in TEX. CIV. PRAC. & REM. CODE ANN. § 16.004 applicable to the Note when the lender's cause of action contractually arose no later than the date of foreclosure of the First Loan in 2008?

–4–

6. Is a right that the lender gave itself to sue on the debt in a second loan for a default on another loan waived if it is not exercised for twelve years after the original lender contractually caused it to accrue when it foreclosed on the first loan?

7. Is the Note still an obligation "secured by a real property lien" when it was acquired by a debt buyer eleven years after the lien against the property was voided by foreclosure?

8. Where there are no servicing records for a 2005 loan can a 2019 guess by a stranger to the loan of the amount that might be owed by the borrower when that stranger has no servicing records of the loan, meet summary judgments standard in TEX. R. CIV. P. 166a?

## Standard of Review

We review a trial court's granting of summary judgment de novo. *See Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex*, 253 S.W.3d 184, 192 (Tex. 2007). We review the evidence presented in the light most favorable to the nonmoving party. *See Mann Frankford Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). The moving party bears the burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). When a plaintiff moves for summary judgment on its own claim, it must prove that is entitled to judgment as a matter of law on each element of its cause of action. *See Castillo Info. Tech. Servs., LLC v. Dyonyx, L.P.,* 554 S.W.3d 41, 45 (Tex. App.—Houston [1st Dist.] 2017, no pet.).

In a traditional summary judgment, the burden of proof does not shift and the non-movant has no burden to respond unless and until the movant has

conclusively established entitlement to summary judgment on the movant's cause of action or affirmative defense as a matter of law. *See Rodriguez v. Ginsburg*, No. 05-17-01266-CV, 2019 WL 4010770, at *3 (Tex. App.—Dallas Aug. 26, 2019, no pet.) (mem. op.) (citing *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222-23 (Tex. 1999); *Casso v. Brand*, 776 S.W.2d 551, 556 (Tex. 1989)). However, once the movant proves a right to summary judgment, the burden shifts to the non-movant to raise a genuine issue of material fact sufficient to defeat summary judgment. *See id.* (citing *M. D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d, 22, 23 (Tex. 2000)). Further, if the non-movant opposes the summary judgment by relying on an affirmative defense or counter-affirmative defense, the non-movant must produce summary judgment evidence sufficient to raise an issue of fact on each element of that affirmative defense to avoid summary judgment. *See id.* (citing *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998)).

<u>Analysis</u>

A. <u>Standing to Enforce the Note and Negotiability</u>

In their first issue, appellants argue appellee lacked standing because the note was not a negotiable instrument and appellee had no right to enforce it. Because standing implicates a court's subject matter jurisdiction, we address this issue first. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993); *In re C.J.*, No. 05-18-01244-CV, 2019 WL 7207171, at *1 (Tex.

App.—Dallas Dec. 27, 2019, no pet.) (mem. op.). "The negotiability of an instrument is a question of law." *Guniganti v. Kalvakuntla,* 346 S.W.3d 242, 248 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

We first address whether the note is a negotiable instrument. "In Texas, negotiable instruments are governed by the Uniform Commercial Code (UCC), as adopted by the Texas Legislature and codified in the Texas Business and Commerce Code." *See Amberboy v. Societe de Banque Privee*, 831 S.W.2d 793, 793 (Tex. 1992). "Negotiable instrument" generally means an "unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order," so long as the promise or order "does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money[.]" TEX. BUS. & COM. CODE ANN. § 3.104(a); *see Thompson v. Yellowfin Loan Servicing Corp.*, No. 01-21-00147-CV, 2023 WL 17492, at *3 (Tex. App.—Houston [1st Dist.] Jan. 3, 2023, no pet. h.) (mem. op.). A promise or order is unconditional unless it states an express condition to payment, that the promise or order is subject to or governed by another record, or that rights or obligations with respect to the promise or order are stated in another record. *See* TEX. BUS. & COM. CODE ANN. § 3.106(a); *Thompson*, 2023 WL 17492, at *3. Comment 1 to section 3.106 explains, in part,

> For example, a promissory note is not an instrument defined by Section 3-104 if it contains any of the following statements: 1. "This note is subject to a contract of sale . . . ." 2. "This note is subject to a

loan and security agreement . . . ." 3. "Rights and obligations of the parties with respect to this note are stated in an agreement . . . between the payee and maker of this note."

TEX. BUS. & COM. CODE ANN. § 3.106 cmt. 1. A reference to another record does not of itself make the promise or order conditional. *Id.* § 3.106(a).

Appellants do not dispute that the note is a promise to pay. They argue the note is conditional and non-negotiable under section 3.106 because it states that it contains a promise "subject to or governed by another record." *See id.* § 3.106(a)(ii). They also argue the note states that "rights or obligations with respect to the promise or order are stated in another record." *See id.* § 3.106(a)(iii).

In support of their argument, appellants rely on the following language in the note:

I will be in default if:
. . .
I break any promise I made in the Loan Agreement;
. . .
you believe in good faith that I am not going to keep any of my promises.

Appellants cite to *Great Northern Energy, Inc. v. Circle Ridge Production, Inc.*, 528 S.W.3d 644 (Tex. App.—Texarkana 2017, pet. denied). The note in *Great Northern* stated that several other documents "are incorporated herein by this reference for all purposes as if fully set forth at length herein." *Id.* at 661. The note also provided it was "subject to the terms of" the separate deed of trust and security agreement. *Id.* Our sister court concluded: "Because the promissory note

–8–

contains statements such as the ones specified under Comment 1 to Section 3.106, the promissory note is not a negotiable instrument under Section 3.104." *Id.*

Another sister court considered a note that stated, "[a]ll of the terms of the Loan Agreement and the Indenture are incorporated into this Note by reference, with the same effect as if they were reprinted here in full." *FFP Mktg. Co. v. Long Lane Master Trust IV*, 169 S.W.3d 402, 409 (Tex. App.—Fort Worth 2005, no pet.). Because the note was governed by the terms of another writing, requiring one to look outside the note to determine if payment was conditional or if the terms of that document altered the rights with respect to payment, the court concluded the note was not a negotiable instrument. *See id.*; *Gunigani v. Kalvakuntla*, 346 S.W.3d 242, 249 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (language in note stating that "[a]dditional advances will be made in accordance with the terms and conditions of the Loan Agreement, reference to the same being here made for all purposes" burdened the note with the conditions of the other document and rendered the note non-negotiable); *Mitchell v. Riverside Nat'l Bank*, 613 S.W.2d 802, 803 (Tex. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.) (language in note that it "is subject to and governed by said contract, which is hereby expressly referred to, incorporated herein and made a part hereof" destroyed the negotiability of the instrument and rendered the instrument burdened by the terms within the extrinsic contract).

The note here does not contain language comparable to that of the notes in *Great Northern*, *FFP Marketing Company*, or *Gunigani*. The notes there expressly incorporated terms of other documents or expressly burdened a note with extrinsic terms. *See Cont'l Nat'l Bank of Fort Worth v. Conner*, 214 S.W.2d 928, 931 (Tex. 1948) (indicating that an otherwise negotiable instrument can be rendered non-negotiable if it is burdened with the conditions of another agreement). Nor does the note contain language comparable to that in comment 1 of section 3.106 that renders an instrument non-negotiable. *See* TEX. BUS. & COM. CODE ANN. § 3.106 cmt. 1.

We find additional guidance in an opinion of the Fourteenth Court of Appeals*, Santos v. Yellowfin Loan Servicing Corp.*, No. 14-21-00151-CV, 2022 WL 2678846 (Tex. App.—Houston [14th Dist.] July 12, 2022, pet. filed) (mem. op.). There, the debtor argued, in part, that a note was non-negotiable because it provided the debtor would be in default if she failed to keep any of her agreements "under this Note *or under any other agreement with [the lender].*" *Id.* at *3 (emphasis in original). *Santos* did not hold the note to be non-negotiable due to that term, which is similar to the terms appellants rely on here. *See id*. at *3. The *Santos* court noted, "A mere 'reference to another record does not of itself make the promise or order conditional.'" *Id.* (citing section 3.106 of the Texas Business and

Commerce Code).[2] We conclude the note is a negotiable instrument. *See id.* §§ 3.104(a), 3.106(a); *cf. Santos*, 2022 WL 278846, at \*3.

We next determine whether appellee is a holder or owner of the note. *See Leavings v. Mills*, 175 S.W.3d 301, 309 (Tex. App.—Houston [1st Dist.] 2004, no pet.) ("to prevail on a summary judgment motion, a party seeking to enforce a note must prove that (1) a certain note is in question, (2) the party sued signed the note, (3) the plaintiff is the owner or holder of the note, and (4) a certain balance is due and owing on the note."). A holder of an instrument is a "[p]erson entitled to enforce" an instrument. *Id.* "A person can become the holder of an instrument when the instrument is issued to that person; or he can become a holder by negotiation." *Id.* (citing comment 1, section 3.201 of the Texas Business and Commerce Code). Negotiation is the "transfer of possession of an instrument . . . by a person other than the issuer to a person who thereby becomes its holder." TEX. BUS. & COM. CODE ANN. § 3.201(a); *Leavings*, 175 S.W.3d at 309. "[I]f an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its indorsement by the holder." TEX. BUS. & COM.

_____

[2] The note in *Santos* also contained section 15, which provided: "You have read and agree to all provisions of this Note including those on pages 1 through 3 *and in the Disclosure statement which are incorporated herein by reference . . . .* See pages 1, 2, and 3 and the Disclosure statement of even date provided to you, the terms of which are incorporated by reference in this Note." *Santos*, 2022 WL 2678846, at \*3 (emphasis in original). The *Santos* court held section 15's language expressly stating that it incorporated terms of the *disclosure statement* into the note rendered the note non-negotiable. *See id*. *Santos* concluded the note was non-negotiable based solely on section 15 of the note. *See id.* at \*4 ("Because the Note expressly incorporates the terms of the Disclosure Statement, the Note is burdened by those terms and rendered non-negotiable."). The note in the case at bar, in contrast, does not expressly incorporate terms of another document.

–11–

CODE ANN. § 3.201(b); *Leavings*, 175 S.W.3d at 309. "The indorsement must be written by or on behalf of the holder and on the instrument or on a paper so firmly affixed to it as to become part of it." *Leavings*, 175 S.W.3d at 309. "If an instrument not in the possession of the original holder lacks a written indorsement and proof of the chain of title, the person in possession does not have the status of a holder." *Id.*

Matt Miller, appellee's custodian of records, testified by affidavit that appellee acquired the note in August 2019 as a part of a pool of mortgages sold by RCS Recovery Services, LLC, and that appellee lawfully held the note, to which a series of putative indorsements and allonges were affixed.[3] The note was originally payable to Hometrust. It executed an allonge making the note payable to Lehman Brothers Bank, FSB. Lehman Brothers Bank, FSB indorsed the allonge making the note payable to the order of Lehman Brothers Holdings, Inc. Lehman Brothers Holdings, Inc. then made an indorsement on the allonge making the note payable to the order of Nationstar Mortgage, LLC. A second allonge to the note made the note payable to the order of RCS Recovery Service, LLC and indicated that Seth Miller, as an authorized signer, signed the allonge for RCS who was acting as

---

[3] An indorsement is "[t]he act of a payee, drawee, accommodation indorser, or holder of a bill, note, check, or other negotiable instrument, in writing his name upon the back of the same, with or without further or qualifying words, whereby the property in the same is assigned and transferred to another." *Indorsement*, Black's Law Dictionary (6th ed. 1990). An allonge is "[a] piece of paper annexed to a negotiable instrument or promissory note, on which to write endorsements for which there is no room on the instrument itself." *Allonge*, Black's Law Dictionary (6th ed. 1990).

attorney in fact for Nationstar. RCS executed a third allonge making the note payable to the order of appellee. Appellee produced evidence that it had possession of the original note and all allonges. Summary judgment evidence included a "mortgage note purchase and sale agreement." It provided RCS Recovery Services, LLC sold mortgage notes to appellee. An exhibit to the agreement reflects that appellee purchased the note. We conclude the indorsements and allonges on the note, as well as the purchase and sale agreement between RCS and appellee constitute more than a scintilla of evidence of the transfer of the possession of the note from the original owner, Hometrust, to the ultimate owner, appellee. *See Thompson v. Yellowfin Loan Servicing Corp.*, No. 01-21-00147-CV, 2023 WL 17492, at *4 (Tex. App.—Houston [1st Dist.] Jan. 3, 2023, no pet. h.) (mem. op.) (concluding on similar facts that Yellowfin met its burden to establish that it was the owner or holder of a note). Appellants failed to introduce evidence demonstrating that a predecessor-in-interest to appellee exercised its right to optional acceleration at the time of foreclosure or at any other time prior to appellee's acceleration of the note.

Appellee met its summary judgment burden to establish that it was the owner or holder of the note. As in *Thompson*—decided by the First Court of Appeals, whose indistinguishable precedent[4] we must follow in this transferred

---

[4] In a June 21, 2021 letter to this Court, appellants' counsel stated: "The undersigned has three *nearly identical* appeals currently pending against Yellowfin in three different courts. This one was transferred

appeal—appellants did not offer controverting evidence that would raise a fact issue on appellee's status as holder of the note. *See id.* at \*4 (holding Yellowfin was the holder of a negotiable instrument).

We overrule appellants' first issue contending that the note was not a negotiable instrument and that appellee had no standing or right to enforce it.

B. <u>Statute of Limitations</u>

In their third, fourth, fifth, and seventh issues, appellants argue appellee's claim was time-barred.

As with the parties in *Thompson* and *Santos*, appellants and appellee disagree on when appellee's claim accrued and which statute of limitations applies to appellee's claim. *See Thompson,* 2023 WL 17492, at \*5; *Santos,* 2022 WL 2678846, at \*5. Appellee argues its claim did not accrue until it accelerated payment on the note and that the six-year limitations period applicable to an action to enforce a note found in the Texas UCC applies. *See* TEX. BUS. & COM. CODE ANN. § 3.118 (providing statute of limitations to sue on "note" is six years). Appellants argue appellee's claim accrued when the first loan was foreclosed. They argue that either the two-year limitations period for deficiency claims applies, *see* TEX. PROP. CODE ANN. § 51.003(a) (if the sale price at which real property is sold at a foreclosure is less than the unpaid balance of indebtedness

<hr>

from the First Court. The same counsel represents Yellowfin in all three cases." (Emphasis added.) The letter explained counsel mistakenly filed the *Thompson* appellate brief in this Court.

secured by the real property, any action to recover the deficiency must be brought within two years of foreclosure sale), or, alternatively, the four-year limitations period for a claim for a debt applies. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(3) (suit for cause of action for debt must be brought within four years.).

The First Court of Appeals has rejected appellants' contention that appellee's cause of action accrued when the property was foreclosed. *See Thompson*, 2023 WL 17492, at *6. The court reasoned,

> The senior lienholder, which at the time of foreclosure was Deutsche Bank, foreclosed on the First Loan—Yellowfin (or its predecessor-in-interest) did not. Although the proceeds from the 2007 foreclosure sale did not satisfy the debt owed under the Note, there was no foreclosure by Yellowfin. That IndyMac was the original lender for both the First Loan and the Second Loan does not change the outcome—they were separate transactions that created separate obligations. Thompson's obligation to pay on the Note was not eliminated by the foreclosure of the First Loan and extinguishment of the junior lien securing the Note. *See Poston v. Wachovia Mortg. Corp.*, No. 14-11-00485-CV, 2012 WL 1606340, at *2 (Tex. App.—Houston [14th Dist.] May 8, 2012, pet. denied) (mem. op.) ("Therefore, when a junior lien is extinguished by foreclosure on a superior lien, the unpaid portion of the loan that was secured by the junior lien merely becomes an unsecured debt for which the lender may obtain a money judgment. Consequently, Wachovia's right to obtain a money judgment based on the Poston's failure to repay the second note was not eliminated by the foreclosure of the superior lien and extinguishment of the junior lien securing payment of the second note.").

*Id.* at *6. (citing *Mandarino v. Sherwood Lane Invs., LLC*, No 01-15-00192-CV, 2016 WL 4034568, at *7-8 (Tex. App.—Houston [1st Dist.] July 26, 2016, no pet.) (mem. op.) ("Because we concluded that the junior lienholder was not seeking a

deficiency judgment when it sued on its promissory note, it was not subject to the statute of limitations for deficiency judgments."")); *see also Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001) (if a promissory note contains an optional acceleration clause, limitations does not automatically start to run upon default; an action accrues "only when the holder actually exercises its option to accelerate" the entire note). The *Thompson* court concluded: "Therefore, as the Fourteenth Court of Appeals held in *Santos*, we hold that Yellowfin is not seeking a deficiency judgment from the 2007 foreclosure sale and Section 51.003 does not apply to Yellowfin's suit." *Thompson*, 2023 WL 17492, at *6.

We conclude appellee is not seeking a deficiency judgment from the 2008 foreclosure sale, and section 51.003 does not apply to appellee's suit. *See id.* at *6. We also determine, for reasons stated below, that the four-year statute of limitations of section 16.004(a)(3) is inapplicable. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(3) (providing limitations period for suit on a debt).

The court in *Thompson* held that because the note was a negotiable instrument, section 3.118 of the Texas Business and Commerce Code provided the appropriate statute of limitations. *See Thompson*, 2023 WL 17492, at *6 (citing *Mandarino*, 2016 WL 4034568, at *8 (applying section 3.118 to action to enforce promissory note); *Aguero v. Ramirez*, 70 S.W.3d 372, 374 (Tex. App.—Corpus Christi-Edinburg 2002, pet. denied) ("[w]here there is a debt secured by a note, which is, in turn, secured by a lien, the note and lien constitute separate

–16–

obligations," and therefore, because plaintiff sued to enforce on payment only on promissory note—and did not sue to enforce lien, deed of trust, or foreclose on real property—six-year statute of limitations in section 3.118 of the Texas Business and Commerce Code applied)); *see also* TEX. BUS. & COM. CODE ANN. § 3.118(a) ("[A]n action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six years after the due date or dates stated in the note, or, if a due date is accelerated, within six years after the accelerated due date.").

We have determined the note is a negotiable instrument, and so we apply section 3.118(a)'s six-year statute of limitations here. *See id.* The note provides it matures with final payment on December 1, 2035. Appellee accelerated payment of the note on March 25, 2020. Consequently, section 3.118(a) required appellee to timely file this lawsuit within six years of March 25, 2020. *See id.*; *Thompson*, 2023 WL 17492, at *6. Appellee filed its original petition in this action on July 13, 2020.

We reject appellants' argument, raised in their seventh issue, that there was only one transaction between Hometrust and appellants with the result that appellee's cause of action accrued when appellee sent "the default letter sent prior to the acceleration." They argue the deed of trust for the note contained a provision that "made a payment default on the First Loan an enforceable default on the Note." They assert the note "contractually added another way for the Note to be

called due in its entirety, aside from the Lender sending an acceleration letter after defaults on the Note." They argue, "It was the payment defaults on the First Loan, a note described as part of the Loan agreement in the first definition in the Deed of Trust for the Note, that contractually caused the accrual of Hometrust's cause of action to enforce both the First Loan and the Note and led to the February 5, foreclosure. That was as early as the default letter sent prior to the acceleration that led to the February 5, 2008, foreclosure."

The same argument was made, almost verbatim, in *Thompson*:

Citing to Paragraph 21 of the Deed of Trust, Thompson contends that "it was the payment defaults on the First Loan that contractually caused the accrual of IndyMac's cause of action to enforce both the First Loan and the Note and led to the July 3, 2007 foreclosure."

*Thompson*, 2023 WL 17492, at *7. The *Thompson* court rejected this "one transaction" accrual theory. In *Thompson*, the court observed that the right to accelerate payments of the note due to default of other instruments was "at the option of the Lender." *Id.* at *7. The deed of trust here provides, "If I do not cure the default on or before the date in the notice, you, *at your option*, may declare all that I owe under this Loan Agreement to be immediately due and payable . . . ." (Emphasis added). *Thompson* concluded the deed of trust gave the lender the right, not the obligation, to accelerate the balance on the note based on an existing default under the terms of an obligation secured by a superior lien, such as the first loan. *See id.* at *7. "Thus [the deed of trust] does nothing to change the rule under

–18–

Section 3.118 that a cause of action for enforcement of a note accrues upon maturity or acceleration." *Id.* (citing Tex. Bus. & Com. Code Ann. § 3.118(a) and *Holy Cross Church of God in Christ,* 44 S.W.3d at 566)). We conclude *Thompson* is indistinguishable in this regard and apply it.

Appellants failed to raise a fact issue regarding their affirmative defense that appellee's claim accrued outside the applicable limitations period. *See Thompson*, 2023 WL 17492, at *7 (citing *Santos*, 2022 WL 2678846, at *6). We conclude appellee has demonstrated that it filed this lawsuit within the time prescribed by section 3.118(a). *See* Tex. Bus. & Com. Code Ann. § 3.118(a); *Thompson*, 2023 WL 17492, at *6. We overrule appellants' third, fourth, fifth, and seventh issues.

## C. Waiver

In their sixth issue, appellants argue appellee waived its right to relief because it took no action for twelve years after its claim "contractually accrued."

The First Court of Appeals has rejected this waiver argument:

> . . . Thompson argues Yellowfin's right to sue on a debt was waived because it took no action on it for more than thirteen years after its claim contractually accrued. This issue is premised on Thompson's mistaken contention that Yellowfin's claim to enforce the Note accrued upon the 2007 foreclosure. We have already explained why Thompson's position on accrual lacks merit. Accordingly, we overrule Thompson's fourth issue.

*Thompson*, 2023 WL 17492, at *8.

–19–

We have determined appellee's cause of action accrued on March 25, 2020, rather than at the time of the 2008 foreclosure. We overrule appellants' sixth issue. *See id*. at *8.

D. Evidence of Amount Demanded

In their eighth issue, appellants argue that even if appellee could enforce the note, appellee introduced no admissible summary-judgment proof of the amount of its alleged claim due to a lack of records of servicing the loan. They argue the amount allegedly owed twelve years after the foreclosure is "a naked guess."

Here, Appellee's records custodian, Matt Miller, averred in an affidavit:

According to Plaintiff's records, Defendants owe a balance of $24,909.60. Plaintiff is not accruing pre-judgment interest. The balance owed was calculated by conducting an amortization of the original principal amount of the Note in accordance with the terms prescribed by the Note (ie: an amortization of $29,325.00.00 over thirty years with interest accruing at a rate of 10.00%) then assuming that each and every payment was timely made through June 1, 2019. To the extent any payment was not made prior to June 1, 2019, Yellowfin waives its right to collect that payment and is not seeking to recover any portion of that payment through this lawsuit.

In *Santos*, Yellowfin's records custodian provided similar evidence in an affidavit offered in support of summary judgment.[5] *Santos*, 2022 WL 2678846, at

---

[5] In *Santos*, Yellowfin's affidavit stated:

According to Plaintiff's records, Defendant owes a balance of $21,023.13. Plaintiff is not accruing pre-judgment interest. The balance owed was calculated by conducting an amortization of the original principal amount of the Note in accordance with the terms prescribed by the Note (ie: an amortization of $24,398.00 over twenty years with interest accruing at a rate of 11.25 %, and a final balloon payment of $17,263.03) then assuming that each and every payment was timely made through May 1, 2019. To the extent any payment was not made prior to June 1, 2019,

–20–

\*7. The *Santos* court concluded, "This uncontroverted evidence is sufficient to establish the amount owed." *Id.* (citing *FFP Mktg.,* 169 S.W.3d at 411 ("Generally, an affidavit that sets forth the total balance, due on a note is sufficient to sustain an award of summary judgment. Detailed proof of the balance is not required."); *Das v. Deutsche Bank Nat'l Tr. Co.*, No. 05-12-01612-CV, 2014 WL 1022385, at \*2 (Tex. App.—Dallas Mar. 5, 2014, pet. denied) (mem. op.) (accepting affidavit testimony from an employee of the "loan . . . servicing agent" as valid evidence of the balance due and owing on the note, given the employee's testimony that he had verified and researched the loan's history and current account information on behalf of the holder, Deutsche Bank); *Albright v. Regions Bank,* No. 13-08-262-CV, 2009 WL 3489853, at \*4 (Tex. App.—Corpus Christi-Edinburg Oct. 29, 2009, no pet.) (mem. op.) ("An affidavit made on personal knowledge of the bank officer, which identifies the notes and guaranty and recites the principal and interest due . . . is sufficient support a summary judgment motion."); *Greene v. Deutsche Bank Nat'l Tr. Co.*, No. 01-04-00483-CV, 2005 WL 1244604, at 1, 3 (Tex. App.—Houston [1st Dist.] May 26, 2005, pet. denied) (mem. op.) (accepting the affidavit of a manager for the "loan servicing agent" as a person sufficiently situated to testify on the balance owed, based on synthesis of eleven records related

Yellowfin waives its right to collect that payment and is not seeking to recover any portion of that payment through this lawsuit.

*Santos*, 2022 WL 2678846, at \*7.

–21–

to the loan's account history.)). Appellants did not present any evidence that they owed a different amount of money or that they were entitled to any credits or offsets (beyond the default amounts excused through June 1, 2019). *See id.* (citing *Sandhu v. Pinglia Invs. Of Tex., L.L.C.,* No. 14-08-00184-CV, 2009 WL 1795032, at *5 (Tex. App.—Houston [14th Dist.] June 25, 2009, pet. denied) (mem. op.) ("Moreover, Sandhu has not presented any controverting evidence raising a fact issue as to Pinglia Investment's method of computation and the accuracy of its figures.")).

The First Court of Appeals, following *Santos*, rejected appellants' "naked guess" argument. *See Thompson*, 2023 WL 17492, at *8-9. In *Thompson*, appellee's custodian of records, Miller, provided affidavit testimony similar to his affidavits here and in *Santos*. *See Thompson*, 2023 WL 17492, at *7. The *Thompson* court stated:

> Moreover, in *Santos*, the Fourteenth Court of Appeals held that *almost identical* testimony was sufficient summary judgment evidence to establish the amount owed on the outstanding note. *Santos*, 2022 WL 2678846, at *7. Thompson did not present any evidence that she owed a different amount of money or that she was entitled to any credits or offsets (beyond the amounts waived by Yellowfin through June 2019). *See id.* Accordingly, we hold that Yellowfin carried its summary judgment burden to show its entitlement to the amounts awarded by the trial court.

*Id.* at *8 (emphasis added).

We conclude appellee carried its summary judgment burden to demonstrate its entitlement to the amount awarded by the trial court. *See id.*

We overrule appellant's eighth issue.

### E. Summary judgment standards and evidence

In their second issue, appellants argue the summary judgment is "void" because the trial court "failed to meet the standards of TEX. R. CIV. P. 166a and failed to follow relevant precedent." *See* TEX. R. CIV. P. 166a.

First, appellants argue "there was no business record supporting the amount demanded, only a guess by someone with no knowledge." We have overruled appellants' eighth issue raising this argument. *See Thompson*, 2023 WL 17492, at *7-8 (citing *Santos*, 2022 WL 2678846, at *7).

Second, appellants argue the trial court did not indulge every reasonable inference and resolve any doubts in their favor as summary judgment non-movants. *See, e.g., Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). Appellants specify two inferences the trial court failed to recognize.[6] They argue, "If it had just upheld those two inferences then the issue of the two year limitations period for a deficiency in TEX. PROP. CODE § 51.003 and the four years for debt in TEX. CIV. PRAC. & REM. CODE § 16.004 would have immediately precluded summary judgment in favor of a plaintiff who filed suit

---

[6] Appellant states the two inferences as follows:

"The second note, the one that Yellowfin is trying to enforce more than twelve years after the 2008 foreclosure of the first, was part of the same transaction as the First Loan. It was not a separate transaction."

"The default on the First Loan caused the accrual of the original lender's cause of action to enforce both the First Loan and on the Note. That was as early as the default letter sent prior to the acceleration that led to the February 2008 foreclosure."

–23–

almost twelve years after the cause of action accrued." We agree with the Fourteenth Court of Appeals, which said of a similar argument against Yellowfin, "But these are legal arguments, not facts from which inferences may be made or doubts to be resolved." *Santos*, 2022 WL 2678846, at \*4. Moreover, the inferences are contrary to law. *See Thompson*, 2023 WL 17492, at \*5-7 (rejecting arguments that (1) cause of action accrued at the point of foreclosure and (2) section 51.003 or section 16.004 applied).

Third, appellants argue that appellee—as an "assignee"—had no greater rights than Hometrust, which appellants assert would itself have been time-barred from bringing this action more than two or four years from the date of the first loan's foreclosure. We have held this action accrued on the date appellee accelerated payment, not from the time of foreclosure. We reject appellants' "assignment" argument.

Fourth, appellants assert the trial court abused its discretion in denying their plea to the jurisdiction and in granting summary judgment due to lack of proof of appellee's standing. We have overruled appellants' first issue in which they argued appellee lacked standing to bring its claim. Moreover, the notice of appeal states, "The judgment being appealed was entered on January 18, 2021." The judgment of January 18, 2021, disposes of appellee's motion for summary judgment. As for appellants' complaint that the trial court abused its discretion in denying their plea

–24–

to the jurisdiction, their second such plea,[7] absent some effort to have amended the notice of appeal, we are precluded from considering an appeal from an order not identified in the notice of appeal. *See* TEX. R. APP. P. 25.1(b) ("The filing of a notice of appeal by any party invokes the appellate court's jurisdiction over all parties to the trial court's judgment or order appealed from."). *See also Fain v. Georgen*, No. 03-17-00313-CV, 2017 WL 4766654, at *3 (Tex. App.—Austin Oct. 19, 2017, no pet.) (mem. op.) (collecting opinions for the proposition that a notice of appeal cannot be amended to challenge an "entirely different order than the one named in the notice").

Additionally, appellants failed to include in the record a trial court order denying their plea to the jurisdiction. Appellants cite to an electronic "case summary" in the record. It contains an April 15, 2021 entry stating, "Order Denied . . . Order Denying Defendant's Plea to the Jurisdiction." Even if the case summary were akin to a docket sheet, which we do not decide, "Docket entries are generally considered to be a memorandum made for the convenience of the clerk and the

---

[7] We identified above the plea to the jurisdiction, original answer, and counterclaim filed on August 10, 2020, and the final judgment of January 18, 2021, which disposed of the case on the merits. The judgment implicitly denied appellants' jurisdictional challenge alleged in their pre-judgment pleadings of August 10, 2020. *See, e.g., Thomas v. Long*, 207 S.W.3d 334, 340-41 (Tex. 2006) ("Because a trial court cannot reach the merits of a case without subject matter jurisdiction, a trial court that rules on the merits of an issue without explicitly rejecting an asserted jurisdictional attack has implicitly denied the jurisdictional challenge.").

Here, we address appellants' second plea to the jurisdiction, filed on February 15, 2021, and order thereon, apparently entered on April 15, 2021, after the trial court's final judgment of January 18, 2021.

trial court and not part of the record to be considered." *WMN, Inc. v. A-ABC Appliance, Inc.,* No. 05-00-00647-CV, 2001 WL 253718, at *2 (Tex. App.—Dallas Mar. 15, 2001, no pet.) (mem. op.). Entries on docket sheets are not generally considered to be trial court orders. *See Haut v. Green Cafe Mgmt., Inc.*, 376 S.W.3d 171, 179 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The clerk's record on appeal "must" include copies of the court's order that is being appealed. TEX. R. APP. P. 34.5(a)(5). "An appellant bears the burden to bring forward a record that enables the appellate court to determine whether appellant's complaints constitute reversible error." *Blue Window Capital, LLC v. City of Dallas,* No. 05-22-00042-CV, 2022 WL 9765467, at *4 (Tex. App.—Dallas Oct. 17, 2022, no pet.) (mem. op.); *In re M.N.M.*, No. 05-14-00723-CV, 2014 WL 6737003, at *8 (Tex. App.—Dallas Dec. 1, 2014, pet. denied) (mem. op.) (stating the same proposition and quoting rule 44.1 of the Texas Rules of Civil Procedure, "No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of . . . probably cause[d] the rendition of an improper judgment. . . .")).

We reject appellants' argument that the trial court abused its discretion in denying their plea to the jurisdiction.

We overrule appellants' second issue.

## Conclusion

We overrule appellants' eight issues and affirm the trial court's judgment.


/Bill Pedersen, III/
BILL PEDERSEN, III
JUSTICE

210306F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

TYVON C. SMITH AND TAMARA
J. SMITH, Appellants

No. 05-21-00306-CV          V.

YELLOWFIN LOAN SERVICING
CORP., AS SUCCESSOR IN
INTEREST TO HOMETRUST
MORTGAGE COMPANY, Appellee

On Appeal from the County Civil
Court at Law No 2, Harris County,
Texas
Trial Court Cause No. 1156795.
Opinion delivered by Justice
Pedersen, III. Justices Carlyle and
Garcia participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee YELLOWFIN LOAN SERVICING CORP., AS SUCCESSOR IN INTEREST TO HOMETRUST MORTGAGE COMPANY recover its costs of this appeal from appellants TYVON C. SMITH AND TAMARA J. SMITH.

Judgment entered this 22nd day of March, 2023.